UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
KATHLEEN HAMMOND HINES,        )
                               )
         Plaintiff,            )
                               )
    v.                         )          Civil Action No. 98-0203 (RWR)
                               )
SHEILA C. BAIR,[1]             )
Chairman, Federal Deposit      )
Insurance Corporation          )
                               )
         Defendant.            )
_____)
```

MEMORANDUM OPINION

    Plaintiff Kathleen Hines filed this action alleging that her
employer, defendant Federal Deposit Insurance Corporation
("FDIC"), had retaliated against her by refusing to promote her,
and denying her request to transfer to another division with her
slot.[2]  At the close of discovery, defendant moved for summary
judgment.  Because plaintiff did not pursue timely her
administrative remedies with respect to her non-promotion claim,
and she has not rebutted defendant's legitimate non-retaliatory
reason for denying plaintiff's request to transfer her with her

_____

    [1]Sheila C. Bair is substituted as the defendant under Fed.
R. Civ. P. 25(d).

    [2]Plaintiff had also claimed that the FDIC had retaliated
against her by giving her a poor performance evaluation.
However, defendant has been granted summary judgment on that
claim.

- 2 -

slot, defendant's renewed motion for summary judgment will be
granted.

## BACKGROUND

Plaintiff, a legal technician in the FDIC's Legal Division,
filed her first administrative equal employment opportunity
("EEO") complaint, designated as FDIC 93-03, with the FDIC on
January 22, 1993, alleging that she had been denied a promotion
in June 1992 on the basis of her race.[3]  On April 8, 1993, Peggy
Coates, the Discrimination Complaint Adjudication Manager for the
FDIC Office of Equal Opportunity ("OEO"), met with plaintiff and
her EEO representative and asked whether plaintiff would settle
the FDIC 93-03 complaint if she received a GC-6 promotion.
(Def.'s Mem. of P. & A. in Supp of Def.'s Renewed Mot. for Summ.
J. ("Def.'s Mem."), Ex. 12 ("Coates Decl.") at ¶ 4; Pl.'s Mem. Of
P.& A. in Opp'n to Def.'s Renewed Mot. for Summ. J. ("Pl.'s
Opp'n") at 3.)  Coates also contacted Lauck Walton, plaintiff's
second-level supervisor, to discuss a settlement between
plaintiff and the FDIC, but Coates was unable to negotiate a
settlement between plaintiff and Walton.  (Coates Decl. at ¶ 4.)
The next working day, plaintiff met with her first-level
supervisor, Floyd Robinson, who told her that he had not
recommended plaintiff for a promotion to GG-6, but that he would

---

[3] The administrative complaint was later dismissed as
untimely and plaintiff did not appeal the decision to the
District Court.  (Am. Compl. at ¶ 13.)

- 3 -

consider doing so.  (Def.'s Mem., Ex. 4 ("Sherman Decl.") at Ex.
A ("Sept. 21, 1993 EEO Compl.") at 1.)

On April 29, 1993, plaintiff met with Walton.  (Sept. 1993
EEO Compl. at 2.)  According to the plaintiff, during this
meeting, Walton "stated that he would be willing to promote me to
the GG-6 if I dropped the EEO complaint.  He went on to say that
if I decided to go on with the EEO complaint I would remain a GG
5."[4]  (Id.) (emphasis in original).  Plaintiff declined Walton's
offer at the meeting, and asked that he transfer her with her
slot to another division within the FDIC.  (Sept. 21, 1993 EEO
Compl. at 2.)  Walton stated that he would approve of a lateral
transfer, but not a transfer with her slot because Walton's
supervisor, Associate General Counsel John Thomas, did not want
the division to lose the slot.  (Id.)

On May 13, 1993, plaintiff sent Walton an e-mail with the
subject heading "Settlement Update."  In it, plaintiff wrote:

> I tried to reach you today concerning your proposal to
> settle my EEO complaint.  Your offer was for me to drop
> my complaint in exchange for a promotion to the Grade 6
> level, effective immediately.  As you know, I am
> currently under consideration for a career ladder
> promotion to the Grade 6 level, which in my view is
> separate from the claim for a promotion I have advanced
> in the EEO complaint.  As I indicated to you, I am
> willing to accept your offer but only if the Legal
> Division further agrees to allow me to transfer myself

---

[4] Walton stated in his deposition that he did not condition
the promotion on the withdrawal of plaintiff's complaint, but
was offering her the promotion in settlement for the EEO complaint.
(Def.'s Mem., Ex. 9 ("Walton Dep.") at 23.)

- 4 -

> and the slot (at the Grade 5/6 level) to another
> Division or Office of the FDIC.  You advised me the
> other day that this additional condition is
> unacceptable to you.  Please let me know if you've
> change[d] your mind about this additional condition.

(Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss, Ex. C ("May 13,

1993 E-Mail").)

On May 21, 1993, Walton sent plaintiff a memorandum with the

subject heading "Your E-Mail 16:37:35 May 13, 1993,"

acknowledging that the "EEO complaint is completely separate from

your present situation in which you are under consideration for a

career ladder promotion by Mr. Robinson."  (Sherman Decl. at

Ex. G ("May 21, 1993 Mem.").)  Walton also noted in the

memorandum that he would not recommend a transfer of the slot and

that he was withdrawing his previously-extended settlement offer

in order to "clear the decks" for future settlement discussions

with plaintiff's new representative, Chris Conanan.  (Id.)

Plaintiff contacted an EEO counselor through her

representative, Chris Conanan, Counsel in the FDIC Legal

Division, on June 24, 1993, alleging that Walton's offer to

promote her in exchange for dropping her EEO complaint

constituted retaliation.  (Def.'s Stmt. of Mat. Facts at ¶ 9.)

Plaintiff filed a second administrative complaint of

discrimination with the FDIC, designated FDIC 93-60, on

September 21, 1993, in which she alleged that Thomas, Walton and

Robinson were retaliating against her by conditioning her

promotion on dropping her EEO complaint.  (Sept. 21, 1993 EEO
Compl. at 3.)

Coates sent a letter dated October 19, 1993, with the
subject line of "Identification of Issues and Request for
Clarification," to plaintiff's EEO representative and plaintiff.
The letter identified the following issue for the complaint
designated FDIC 93-60: "That her career ladder promotion to Legal
Technician, Grade 6, was denied on May 21, 1993, by management of
the Legal Division's, [sic] Professional Liabilities Section."
(Pl.'s Opp'n to Def.'s Mot. to Dismiss, Ex. 1 ("Hines Decl.") at
Ex. D ("October 19, 1993 Letter") at 1.)  Coates sent a second
letter dated November 18, 1993, with a subject line of
"Identification of Issue for Investigation and Assignment of
Investigator."  In that letter, Coates identified the issue for
the complaint designated FDIC 93-60 as follows: "Whether in
reprisal for her prior participation in the complaint process on
April 29, 1993, Mr. Lauck Walton told Ms. Hammond that he would
promote her to the GG-6 grade level, if she would drop her prior
complaint."  (Sherman Decl. at Ex. F ("Nov. 18, 1993 letter").)
The November 18, 1993 letter also stated that plaintiff's
representative should notify Coates within five calendar days if
the issue as described had not been correctly identified.  Id.
Plaintiff did not object to the identification of the issue in
the November 18, 1993 letter.  The investigation conducted by the

- 6 -

FDIC focused on Walton's offer to promote plaintiff on April 29, 1993.  ("Sherman Decl. at ¶ 22.)

Plaintiff filed a third EEO complaint, designated FDIC 94-65, on November 21, 1994, alleging that in retaliation for her September 1993 claim, defendant denied "her request for a written statement [from] the Legal Division that if she was offered another position in the agency, that the Legal Division would agree to reassign her together with her slot." (Am. Compl. at ¶ 16.)  According to plaintiff, she began seeking a transfer with her slot out of the legal division prior to the April 29, 1993 meeting with Walton.[5] (Pl.'s Dep. at 78.)  Plaintiff was never transferred out of the legal division.  (Def.'s Stmt. of Material Facts at ¶ 23; Pl.'s Dep. at 75-76.)

Plaintiff's amended complaint alleges that Walton "retaliated against plaintiff and her activities in pursing her complaint of discrimination by refusing to promote her to the next grade of her career ladder position until she dropped her complaint of discrimination." (Am. Compl. at ¶ 11.)  The amended complaint also alleges that she was denied a transfer with her slot in retaliation for filing her second EEO complaint.  (Id. at ¶ 16.)  The defendant seeks summary judgment.

---

[5] Plaintiff also stated in her deposition that although she sought a transfer to other positions within the legal division, she primarily sought a transfer to positions outside of the legal division.  (Pl.'s Dep. at 107-108.)

## DISCUSSION

"Summary judgment is appropriate when the pleadings and the evidence demonstrate that 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Feirson v. Dist. of Columbia, 506 F.3d 1063, 1065 (D.C. Cir. 2007) (quoting Fed. R. Civ. P. 56(c)); see also Nails v. England, 311 F. Supp. 2d 116, 121 (D.D.C. 2004). "Not all alleged factual disputes represent genuine issues of material fact which may only be resolved by a jury. Material facts are those that might affect the outcome of the suit under governing law, and a genuine dispute about material facts exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Nails, 311 F. Supp. 2d at 121 (internal quotations omitted).

"In deciding whether there is a genuine issue of material fact, the court must assume the truth of all statements proffered by the non-movant except for conclusory allegations lacking any factual basis in the record." Hussain v. Nicholson, 435 F.3d 359, 365 (D.C. Cir. 2006) (quoting Dist. Intown Prop. L.P. v. District of Columbia, 198 F.3d 874, 878 (D.C. Cir. 1999)). "Summary judgment may be granted even if the movant has proffered no evidence, so long as the non-movant 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden

- 8 -

of proof at trial.'" <u>Dist. Intown Prop.</u>, 198 F.3d at 878 (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986)). "Although the burden on the nonmoving party is not great, it is still required to show specific facts, as opposed to general allegations, that present a genuine issue worthy of trial." <u>Palestine Info. Office v. Shultz</u>, 853 F.2d 932, 944 (D.C. Cir. 1988).

I.   NON-PROMOTION

Before filing a Title VII suit, a federal employee must timely pursue her administrative remedies, following the requirements set forth in 29 C.F.R. § 1614.  If a plaintiff believes that she has been unlawfully discriminated against, she must consult an EEO counselor in an effort to resolve the situation informally.  <u>See</u> 29 C.F.R. § 1614.105(a).  This contact with the EEO counselor must occur within 45 days of the alleged discriminatory incident.  <u>See</u> 29 C.F.R. § 1614.105(a)(1).  "The agency or the Commission shall extend the 45-day time limit . . . when the individual shows . . . that he or she did not know and reasonably should not have known that the discriminatory matter or personnel action occurred . . .."  29 C.F.R. § 1614.105(a)(2). The defendant bears the burden of proving that the plaintiff failed to properly exhaust her administrative remedies.  <u>See</u> <u>Colbert v. Potter</u>, 471 F.3d 158, 165 (D.C. Cir. 2006); <u>Armstrong v. Reno</u>, 172 F. Supp. 2d 11, 20 (D.D.C. 2001) (citing <u>Bowden v.</u>

United States, 106 F.3d 433, 437-38 (D.C. Cir. 1997) and Brown v. Marsh, 777 F.2d 8, 13 (D.C. Cir. 1985)).  The plaintiff has the burden of pleading and proving facts supporting any equitable extension of the administrative time limits.  See Armstrong, 172 F. Supp. 2d at 21 (citations omitted).  "The plaintiff's time for [contacting an EEO counselor] starts to run when the plaintiff has a reasonable suspicion that [she] has been the victim of discrimination."  Johnson v. Gonzales, 479 F. Supp. 2d 55, 59 (D.D.C. 2007) (citing McCants v. Glickman, 180 F. Supp. 2d 35, 40 (D.D.C. 2001)).  A plaintiff is not allowed to "wait until [she] has direct proof of the allegedly discriminatory actions; rather, . . . a plaintiff [must contact an EEO counselor] even if [she] is not in possession of the 'supportive facts' necessary to prosecute a discrimination charge."  Id. (quoting Parades v. Nagle, Civil Action No. 81-1374 (TAF), 1982 WL 319, at *4 (D.D.C. 1982)).

The procedural requirements governing a plaintiff's right to bring a Title VII claim in court are not mere technicalities. "[I]t is part and parcel of the Congressional design to vest in the federal agencies and officials engaged in hiring and promoting personnel 'primary responsibility' for maintaining nondiscrimination in employment."  Patterson v. Johnson, 391 F. Supp. 2d 140, 145 (D.D.C. 2006) (quoting Kizas v. Webster, 707 F.2d 524, 544 (D.C. Cir. 1983)).  "Exhaustion is required in

order to give federal agencies an opportunity to handle matters internally whenever possible and to ensure that the federal courts are burdened only when reasonably necessary." Brown v. Marsh, 777 F.2d at 14.  The consultation deadline allows an employer to investigate promptly before evidence becomes stale. See, e.g., Delaware State Coll. v. Ricks, 449 U.S. 250, 256-57 (1980) (stating that the Title VII administrative filing requirement protects employers from the burden of defending claims that arise from decisions that were made long ago).

Defendant contends that the alleged retaliatory conduct plaintiff complains of first occurred on April 29, 1993 when Walton met with the plaintiff and allegedly told her he would promote plaintiff only if she dropped her EEO complaint. Plaintiff's EEO representative did not contact an EEO counselor regarding her claim of retaliation until June 24, 1993.  Since this was more than 45 days after plaintiff's meeting with Walton on April 29, 1993, defendant argues that the retaliation claim is untimely.  Plaintiff disagrees, arguing that May 21, 1993, the date of Walton's memorandum, was the date of the alleged retaliatory event.  She cites as support her EEO counselor's September 29, 1993 report which noted the date of the alleged discriminatory event to be May 21, 1993, and the October 19, 1993 FDIC letter with the subject line "Identification of Issues and Request for Clarification," identifying the alleged retaliatory

- 11 -

event as "[denial of] her career ladder promotion to Legal
Technician, Grade 6, . . . on May 21, 1993, by management of the
Legal Division's, [sic] Professional Liabilities Section."
(Letter of Oct. 19, 1993.)  She claims that the retaliation was
part of a continuing violation and that she did not understand
the retaliatory nature of the settlement offer until she received
Walton's May 21, 1993 memorandum withdrawing the settlement
offer.  She asserts that the contact on June 24, 1993 was timely
since it occurred fewer than 45 days after the May 21, 1993
memorandum from Walton to plaintiff.

Crediting for argument's sake that Walton's April 29, 1993
proposition was actionable retaliation, plaintiff's own words and
actions demonstrate that she knew or reasonably should have
suspected on that date that discrimination had occurred.  See
Aceto v. England, 328 F. Supp. 2d 1, 7 (D.D.C. 2004).
Plaintiff's amended complaint alleges that Walton "retaliated
against plaintiff and her activities in pursuing her complaint of
discrimination by refusing to promote her to the next grade of
her career ladder position until she dropped her complaint of
discrimination."  (Am. Compl. at ¶ 11.)  Plaintiff's declaration
and deposition testimony show that, as of April 29, 1993,
plaintiff believed that she would not be given a promotion unless
she withdrew her EEO complaint.  In plaintiff's declaration of
November 29, 1999, she stated that "[o]n or about April 29, 1993,

. . . Mr. Walton stated that he would only be willing to promote me to the GG-6 only if I dropped the EEO complaint." (Pl.'s Decl. at ¶ 7.)  Plaintiff also testified that Walton stated on April 29, 1993 that he was "willing to promote [her] to the 6 if [she] dropped all EEO complaints . . .." (Def.'s Mem., Ex. 3 ("Pl.'s Dep") at 60-61.)  Her own e-mail to Walton two weeks after the April 29, 1993 meeting confirmed her understanding of his proposal that she drop her complaint in exchange for a promotion to the Grade 6 level.  (May 13, 1993 E-mail.)

In addition, plaintiff's own EEO complaint, filed on September 21, 1993, indicates that she believed as of the April 29, 1993 meeting that Walton would not promote her unless she dropped her EEO complaint.  It described in detail the April 29, 1993 meeting with Walton.  Although the May 21, 1993 Walton memorandum was attached to the EEO complaint, plaintiff's description of the events mentioned not the memorandum but the April 29, 1993 meeting.  Plaintiff's EEO complaint alleged, in pertinent part, that on April 29, 1993, "Mr. Walton stated that he would be willing to promote me to the GG-6 if I dropped the EEO complaint.  He went on to say that if I decided to go on with the EEO complaint I would remain a GG-5." (Sept. 21, 1993 EEO Compl. at 2.)  Plaintiff alleged in her September 1993 EEO complaint, among other things, that she was denied a promotion in retaliation for refusing to drop her first EEO complaint filed in

- 13 -

January 1993.  She expressly stated that her decision at the
April 29, 1993 meeting not to drop her complaint resulted in
Walton's alleged refusal to promote her:

> I stated to Mr. Walton that I could not drop something
> I believed in just to be promoted.  I stated to
> Mr. Walton that the EEO complaint and the promotion are
> two separate issues . . . .  I was promotable to the
> GG-6 before Mr. Lauck Walton discussed me dropping the
> EEO complaint in exchange for the promotion to the GG-6
> Legal Technician.  Once I decided not to drop my
> complaint, I instantly became non-promotable under
> Mr. Robinson.

(Id.)  Nor did plaintiff ever object to or seek to correct or
clarify Coates' November 18, 1993 letter which identified the
issue to be investigated for her retaliation complaint as whether
Walton's April 29, 1993 promotion offer being conditioned on
plaintiff dropping her complaint was retaliation for her prior
participation in the complaint process.  Plaintiff confirmed
during her deposition that the November 18, 1993 description of
the issue was correct.  (Pl.'s Dep. at 105.)  The investigation
that was conducted focused on the issue as it was stated in that
letter.

Plaintiff also argues that the EEO contact was timely
because the April 29, 1993 and May 21, 1993 events were part of a
continuing violation.  (Pl.'s Opp'n at 4, 11 n.8.)  "For statute
of limitations purposes, a continuing violation is 'one that
could not reasonably have been expected to be made the subject of
a lawsuit when it first occurred because its character as a

- 14 -

violation did not become clear until it was repeated during the
limitations period[.]" Taylor v. F.D.I.C., 132 F.3d 753, 765
(D.C. Cir. 1997) (quoting Dasgupta v. Univ. of Wisconsin Bd. of
Regents, 121 F.3d 1138, 1139 (7th Cir. 1997)).  In this case, it
would be peculiar indeed if the character of Walton's alleged
April 29, 1993 ultimatum as the triggering act of a continuing
violation did not become obvious until he withdrew it weeks
later.  As is stated above, though, the undisputed material facts
make plain that plaintiff knew or should reasonably have known
that Walton's behavior she says she witnessed was the
discriminatory retaliation she claims that it was.

Moreover, in National Railroad Passenger Corporation v.
Morgan, 536 U.S. 101 (2002), the Supreme Court held that Title
VII "precludes recovery for discrete acts of discrimination or
retaliation that occur outside the statutory time period."  Id.
at 105.  The Court held that "a Title VII plaintiff raising
claims of discrete discriminatory or retaliatory acts must file
[her] charge within the appropriate time period."  Id. at 122.
In so holding, the Court discussed prior opinions in which it had
rejected a plaintiff's attempt to use, for example, a termination
that occurred within the limitations period to "pull in . . . a
time-barred discriminatory act."  Id. at 113.  "[D]iscrete
discriminatory acts are not actionable if time barred, even when
they are related to acts alleged in timely filed charges.  Each

- 15 -

discrete discriminatory act starts a new clock for filing charges alleging that act."  Id.; see also Ledbetter v. Goodyear Tire & Rubber Co., 127 S. Ct. 2162, 2169 (2007) (stating that to be actionable, a discrete act must occur within the filing period).

Plaintiff may not benefit from the continuing violation theory to revive her claim based on the April 29, 1993 event, a "discrete" event within the meaning of Morgan.  The fact that Walton sent the May 21, 1993 memorandum does not make the complaint timely, because the earliest alleged discrete retaliatory act occurred on April 29, 1993, when plaintiff understood Walton's settlement offer to mean that he would not promote her unless she dropped her EEO complaint.  Walton's withdrawal of his proposal on May 21, 1993 did not convert the April 29, 1993 event into a continuing violation and did not re-start the 45-day clock.  Indeed, at no time during the administrative process, and at no place in her complaint or her amended complaint in this action, did plaintiff state that the May 21, 1993 withdrawal of the settlement offer was the retaliatory event at issue.  During the administrative process and in her complaints here, plaintiff always maintained that the alleged retaliatory act was conditioning any promotion upon her dropping her EEO complaint.  Accordingly, recasting the act of retaliation as the withdrawn proposal is unavailing.

- 16 -

Because the alleged retaliatory event occurred on April 29, 1993 and plaintiff first contacted an EEO counselor on June 24, 1993, plaintiff failed to contact an EEO counselor within 45 days of the alleged retaliatory event.  Thus, defendant has sustained its burden of proof in establishing that the plaintiff failed to pursue timely her administrative remedies.  Plaintiff has set forth no evidence to warrant an equitable extension of the administrative time requirements.  Accordingly, defendant's motion for summary judgment with respect to plaintiff's claim that Walton refused to promote her until she dropped her EEO complaint will be granted.

II.  DENIAL OF TRANSFER WITH SLOT

A court considering a motion for summary judgment on a Title VII retaliation claim applies a burden-shifting framework. Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999); see Smith v. Dist. of Columbia, 430 F.3d 450, 455 (D.C. Cir. 2005).  A plaintiff must establish a prima facie case of retaliation by showing that she engaged in activity protected by Title VII, that the defendant took an adverse employment action against her, and that the adverse action was causally related to the exercise of her rights.  See Woodruff v. Peters, 482 F.3d 521, 529 (D.C. Cir. 2007); Smith, 430 F.3d at 456; Jones v. Washington Metro. Area Transit Auth., 205 F.3d 428, 433 (D.C. Cir. 2000); Brown, 199 F.3d at 452.  Once the plaintiff has established a prima facie

- 17 -

case, the burden shifts to the employer to "articulate a legitimate nonretaliatory reason for its action." Cones v. Shalala, 199 F.3d 512, 520-21 (D.C. Cir. 2000); see also Singletary v. District of Columbia, 351 F.3d 519, 524 n.5 (D.C. Cir. 2003). If the employer meets this burden, the burden shifting ends, and a court must assess "whether a reasonable jury could infer intentional [retaliation] from the plaintiff's prima facie case and any other evidence the plaintiff offers to show that the actions were [retaliatory] or that the [non-retaliatory] justification was pretextual." Smith, 430 F.3d at 455 (internal quotations and citations omitted); Woodruff, 482 F.3d at 529. Under Brown, denying a lateral transfer can constitute an adverse action if it results in an objectively tangible harm to a future employment opportunity. Id., 199 F.3d at 457.

Plaintiff filed an EEO complaint on November 21, 1994 alleging that in retaliation for her September 1993 claim, defendant denied "her request for a written statement [from] the Legal Division that if she was offered another position in the agency, that the Legal Division would agree to reassign her together with her slot." (Am. Compl. ¶ 16.) Plaintiff argues that defendant's denial of a transfer with her slot is an adverse action because she lost the opportunity to be promoted by being required to remain in the Professional Liability section. (Pl.'s Opp'n at 21.)

- 18 -

Plaintiff's argument suffers from two key weaknesses.  The
first is that she has presented no evidence that she or any other
employee of her division was entitled to expect that her division
would upon request forfeit an allocated employee position to
accommodate an employee's desire to transfer laterally.  She has
cited no authority to support the proposition that an employee
makes out an adverse action when an employer, preferring to keep
staffing slots and not reduce them, declines to surrender a slot
it had neither wanted to surrender nor offered to anyone to
surrender.

Second, assuming for the sake of argument that plaintiff
could make out a prima facie case of retaliation with respect to
defendant's denial of a transfer with her slot, defendant's
explanation is a legitimate non-retaliatory justification.
Defendant has provided evidence that plaintiff was denied a
transfer with her slot because it would have reduced the
Professional Liability section staff level.  Walton's May 21,
1993 memorandum to plaintiff states: "From the beginning, I have
also made it clear to you that I had to be in a position to fill
the vacancy your leaving would create.  Obviously, if we transfer
your slot, we cannot do that. . . .  I have informed you that if
you could consummate a lateral without transferring the slot,
that would be satisfactory, but that I would not recommend either

- 19 -

retroactivity or transfer of the slot."  (May 21, 1993 Mem.)[6]
Walton stated in his deposition that plaintiff "couldn't take her
slot outside the legal division because the legal division
wouldn't do that."  (Walton Dep. at 20-21.)   Plaintiff's EEO
complaint even corroborates that.  (EEO Complaint at 3 ("Mr.
Walton stated that Mr. Thomas did not [want] to [lose] the Legal
Technician slot.").)  Walton further stated that Glen Bjorklund
had told either him or Thomas that plaintiff could not be
transferred with her slot.  (Id.)  Bjorklund, the former Manager
for Administration of the FDIC Legal Division, stated in his EEOC
hearing testimony that he discussed transferring plaintiff with
her slot with Walton and Walton's supervisor, John Thomas, and
Bjorklund told them that he "didn't believe that Deputy General
Counsel Smith would approve the moving of the slot and that it
was something that . . . they could recommend, but that they
could not approve on their own.  (Def.'s Mem. Ex. 14 ("EEOC Hr'g,
Test. of Glen Bjorklund") at 381.)  Bjorklund stated that he
believed that Walton and Thomas "both wanted to permit her to
leave with her slot."  (Id. at 382.)  Bjorklund also stated that
the decision was made not to grant it because "[t]he division was

_____

[6] Plaintiff even confirms that Walton would have allowed
plaintiff a lateral transfer without her slot had she requested
one.  Plaintiff stated in her second administrative complaint of
discrimination (FDIC 93-60) that when she met with Walton on
April 29, 1993 and discussed a possible transfer, he said he
would agree to a lateral transfer without the slot.  (EEO
Complaint at 3.)

not willing to give up a position to another position that it would have to turn around and fill from within its own allocation, because we would have had to have transferred another slot or decided that the work could go undone or go out and recruit somebody from either within the division or outside of the division to do the work that [plaintiff] was doing." (<u>Id.</u> at 382.)  Bjorklund recalled that Deputy General Counsel Smith made the decision not to permit plaintiff to transfer with her slot. (<u>Id.</u> at 383.)

In an attempt to demonstrate pretext, plaintiff first argues that Walton's testimony conflicts with Robinson's deposition testimony.  She points to Robinson's statement in his deposition that "[a]t some point I am reasonably certain that [Thomas] agreed to let her transfer out with her slot." (Robinson Dep. at 18.)  This testimony does not suggest pretext.  Regardless of whether Thomas was willing to transfer plaintiff with her slot, the fact remains neither Walton nor Thomas had the authority to transfer plaintiff with her slot, and that Deputy General Counsel Smith would have to approve any such request.  (EEOC Hr'g, Test. of Glen Bjorklund at 381.)  Bjorklund's uncontroverted testimony demonstrates that neither Walton nor Thomas made the decision and that the decision was made to maintain staffing allocations. Plaintiff also argues that Bjorklund did not discuss the transfer question with Walton and Thomas until 1995, almost two years

- 21 -

after her request to be transferred, citing to his testimony at the EEOC hearing.  However, plaintiff's argument is not supported by the testimony she cites.  All Bjorklund's July 29, 1997 testimony reflects is that Bjorklund recalled that Deputy General Counsel Smith made the decision not to permit plaintiff to transfer with her slot, but when asked when the decision was made, Bjorklund responded "I don't recall the actual date.  I believe it was well over two years ago."  (EEOC Hr'g, Test. of Glen Bjorklund at 383.)

Even if denying one a lateral transfer with one's slot could constitute an adverse action and plaintiff could establish a prima facie case of retaliation based on the denial of a transfer with her slot, the fact that the Legal Division did not want to reduce its overall number of staff positions by transferring the slot is a legitimate non-retaliatory reason for the denial. Plaintiff has not presented sufficient evidence to demonstrate that defendant's legitimate non-retaliatory reason for denying plaintiff a transfer with her slot was a pretext for retaliation. Accordingly, defendant is entitled to summary judgment on this claim.

## CONCLUSION

Because the plaintiff failed to contact an EEO counselor within 45 days of the alleged retaliatory event on April 29, 1993, and plaintiff has offered no evidence to establish that

- 22 -

extension of the administrative deadlines is warranted, plaintiff has failed to pursue timely her administrative remedies and summary judgment will be entered in favor of the defendant as to the non-promotion claim.  Because defendant has provided a legitimate non-retaliatory reason for denying plaintiff a lateral transfer with her slot, and plaintiff has not presented sufficient evidence to demonstrate that the reason is a pretext for retaliation or that the denial otherwise was retaliatory, summary judgment will be entered in favor of defendant on that claim.  Accordingly, defendant's renewed motion for summary judgment will be GRANTED.  An appropriate Order accompanies this Memorandum Opinion.

SIGNED this 27 day of January, 2009.

                    /s/
RICHARD W. ROBERTS
United States District Judge